**SEYFARTH SHAW LLP**
Jon D. Meer (SBN 144389)
jmeer@seyfarth.com
Bethany A. Pelliconi (SBN 182920)
bpelliconi@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:    (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendants DNC PARKS &
RESORTS AT TENAYA, INC., DNC PARKS &
RESORTS RESERVATIONS, INC., DNC
PARKS & RESORTS AT ASILOMAR, INC.,
DNC PARKS & RESORTS AT KINGS
CANYON, INC., DNC PARKS & RESORTS AT
SEQUOIA, INC., DNC PARKS & RESORTS
FISH CAMP LODGING, INC., DELAWARE
NORTH COMPANIES PARKS & RESORTS,
INC., AND DELAWARE NORTH
COMPANIES, INCORPORATED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

RICHARD PERAINO, individually, and on behalf of all others similarly situated,

    Plaintiff,

        vs.

DNC PARKS & RESORTS AT TENAYA, INC., a Delaware corporation; DNC PARKS & RESORTS RESERVATIONS, INC., a California corporation; DNC PARKS & RESORTS AT ASILOMAR, INC., California corporation; DNC PARKS & RESORTS AT KINGS CANYON, INC., DNC PARKS & RESORTS AT SEQUOIA, INC., a Delaware corporation; DNC PARKS & RESORTS FISH CAMP LODGING, INC., a Delaware corporation; DELAWARE NORTH COMPANIES PARKS & RESORTS, INC., a Delaware corporation; DELAWARE NORTH COMPANIES, INCORPORATED; a Delaware corporation, and DOES 1 through 10, inclusive,

    Defendants.

Case No. **'25CV1130 JES  DEB**

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

(San Diego Superior Court Case No. 25CU016480C)

[Filed concurrently with Declarations of Kent Leininger and Bethany Pelliconi]

Complaint Filed:  March 28, 2025

i

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

317504003v.1

1
2
3

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF RICHARD PERAINO AND AND HIS ATTORNEYS OF RECORD:**

4
5
6
7
8
9
10
11
12
13
14
15

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. Sections 1331, 1332, 1441, 1446, and 29 U.S.C. section 185(a), Defendants DNC PARKS & RESORTS AT TENAYA, INC., DNC PARKS & RESORTS RESERVATIONS, INC., DNC PARKS & RESORTS AT ASILOMAR, INC., DNC PARKS & RESORTS AT KINGS CANYON, INC., DNC PARKS & RESORTS AT SEQUOIA, INC., DNC PARKS & RESORTS FISH CAMP LODGING, INC., DELAWARE NORTH COMPANIES PARKS & RESORTS, INC., AND DELAWARE NORTH COMPANIES, INCORPORATED ("Defendants") hereby remove the above-captioned action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.  This Court has original jurisdiction pursuant to 29 U.S.C. § 1331 (federal question) and under the Class Action Fairness Act of 2005, 28 U.S.C. section 1332(d)(2), and 28 U.S.C. sections 1332(c), 1332(d)(2), 1441(a), 1446, and 1453.

16

I.    **BACKGROUND**

17
18
19
20
21
22
23
24
25
26
27
28

1.    On March 28, 2025, Plaintiff Richard Peraino ("Plaintiff") filed an unverified putative Class Action Complaint in the Superior Court of the State of California for the County of San Diego (the "State Court Action"), entitled "RICHARD PERAINO, individually, and on behalf of all others similarly situated, Plaintiff, vs. DNC PARKS & RESORTS AT TENAYA, INC., a Delaware corporation; DNC PARKS & RESORTS RESERVATIONS, INC., a California corporation; DNC PARKS & RESORTS AT ASILOMAR, INC.,  California corporation; DNC PARKS & RESORTS AT KINGS CANYON, INC., DNC PARKS & RESORTS AT SEQUOIA, INC., a Delaware corporation; DNC PARKS & RESORTS FISH CAMP LODGING, INC., a Delaware corporation; DELAWARE NORTH COMPANIES PARKS & RESORTS, INC., a Delaware corporation; DELAWARE NORTH COMPANIES, INCORPORATED; a Delaware corporation, and DOES 1 through 10, inclusive,

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

Defendants, designated as Case No. 25CU016480C (the "Complaint"). The Complaint asserts the following causes of action: (1) Failure To Pay Minimum and Straight Time Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, 1197, and 1197.1); (2) Failure to Pay Overtime Wages (Cal. Lab. Code §§ 1194 and 1198); (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7 , 512); (4) Failure to Authorize and Permit Rest Periods (Cal. Lab. Code §§ 226.7); (5) Failure To Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201-203); (6) Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); (7) Failure to Indemnify  Employees for Expenditures (Cal. Lab. Code § 2802); (8) Failure to Produce Requested Employment Records (Cal. Lab. Code §§ 226 and 1198.5); and (9) Unfair Business Practices (Cal. Bus & Prof. Code §§ 17200, *et seq*.). A true and correct copy of the Complaint is attached as **Exhibit A** to the Declaration of Bethany Pelliconi.

2.      On April 2, 2025, the registered agents for service of process for each of the Defendants received a packet containing a Summons and Complaint, Civil Case Cover Sheet, ADR Information Package; Voluntary Efficient Litigation Stipulations; Order Pursuant to CCP 1054(a); First Amended General Order Re: Mandatory Electronic Filing; and Notice of Case Assignment.  True and correct copies of these documents are attached as **Exhibit B** to the Declaration of Bethany Pelliconi.

3.      On April 2, 2025, Plaintiff filed with the Court in the State Court Action Proofs of Service of the Summons and Complaint on each of the Defendants.  True and correct copies of these documents are attached as **Exhibit C** to the Declaration of Bethany Pelliconi.

4.      Defendants have not filed or received any papers in the State Court Action, other than those listed above and attached to the Declaration of Bethany A. Pelliconi as **Exhibits A-C**.  (*See* Pelliconi Decl., ¶ 6.)

## II.    **TIMELINESS OF REMOVAL**

5.      Notice of removal is timely if it is filed within 30 days after service of the complaint or summons —"The notice of removal . . . shall be filed within 30 days after

2

the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant . . . ." 28 U.S.C. §1446(b)(1).

6.    The service of process which triggers the 30-day period to remove is governed by state law. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 347–48 (1999) ("we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint . . . ."); *City of Clarksdale v. BellSouth Telecommunications, Inc*., 428 F.3d 206, 210 (5th Cir. 2005) ("federal law requires the defendant to file a removal motion within thirty days of service . . .").

7.    Defendants' Notice of Removal is timely under 28 U.S.C. § 1446(b) because it was filed on May 2, 2025, which is within 30 days of service of the Summons and Complaint on April 2, 2025.  (Pelliconi Decl., ¶ 4.).

## I.    FEDERAL QUESTION JURISDICTION REMOVAL – FEDERAL ENCLAVE

8.    This Court has original federal question jurisdiction over state law claims that are preempted on federal grounds.  *See*, *e.g.*, *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1038 (N.D. Cal. 2005) (denying plaintiff's motion to remand, and holding that preempted state law claims concerning property in federal enclaves establishes a basis for removal based upon federal question jurisdiction).

9.    Under the federal enclave doctrine, "[t]he jurisdiction of the Federal Government becomes 'exclusive'" when "the United States acquires, with the consent of the state legislature land within the borders of that state." *Perez v. DNC Parks & Resorts at Asilomar, Inc.*, 2019 WL 5681169, *4 (E.D. Cal. Oct. 31, 2019) (quoting *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1236–37 (10th Cir. 2012).

10.    "When an area becomes a federal enclave, Congress assumes the power of legislation over the area." *Lockhart v. MVM, Inc.*, 175 Cal. App. 4th 1452, 1457 (2009). This federal power emanates from the United States Constitution which gives Congress

3

power "[t]o exercise exclusive legislation in all cases whatsoever . . . by cession of particular states, and the acceptance of Congress[.]"  U.S. Const. art. I, § 8, cl. 17; *see also Johnson v. Morrill*, 20 Cal. 2d 446, 450 (1942) ("The exercise of exclusive legislation and of exclusive jurisdiction have been held to be synonymous.").

11.    "Any claim arising on a "federal enclave[]" . . . necessarily arises under federal law, providing a basis for federal question jurisdiction."  *Durham v. Lockheed Martin Corp.*, 2003 WL 25739368 *1 (N.D. Cal. 2003) *citing to Matter v. Holley*, 200 F.2d 123, 125 (5th Cir. 1952) and *Willis v. Craig*, 555 F.2d 724, 726 at n.4 (9th Cir. 1977).

### 1.    Defendant DNC Parks & Resorts at Sequoia, Inc. Is A Federal Enclave

12.    Plaintiff alleges that he was employed by Defendant DNC Parks & Resorts at Sequoia, Inc., and has asserted all of his claims against that entity, in addition to all other Defendants. (Complaint ¶¶ 9, 15-106.)

13.    DNC Parks & Resorts at Sequoia, Inc. is a federal enclave, located in Sequoia National Park.  *See* Leininger Decl., at ¶ 13; *Perez v. DNC Parks & Resorts,* 2019 WL 5681169, *4 (finding that DNC Parks & Resorts at Sequoia, Inc. "operate[s] in the . . . Sequoia National Parks, which have been federal enclaves since June 2, 1920."); *See* 16 U.S.C. § 57 ("Sole and exclusive jurisdiction is assumed by the United States over the territory embraced and included within the . . . Sequoia National Park . . . ."); *see also* Stats. 1920, ch. 218, § 1, p. 731  ("The provisions of the Act of the Legislature of the State of California (approved April 15, 1919), ceding to the United States exclusive jurisdiction over the territory embraced and included within the Yosemite National Park, Sequoia National Park, and General Grant National Park, respectively, are hereby accepted and sole and exclusive jurisdiction is hereby assumed by the United States over such territory . . . .")).

### 2.    Defendant DNC Parks & Resorts at Kings Canyon, Inc. Is A Federal Enclave

14.    Plaintiff alleges that he was employed by Defendant DNC Parks & Resorts

4

317504003v.1

at Kings Canyon, Inc., and has asserted all of his claims against that entity, in addition to all other Defendants. (Complaint ¶¶ 9, 15-106.)

15. DNC Parks & resorts at Kings Canyon, Inc. is a federal enclave, located in Kings Canyon National Park. *See* Leininger Decl., ¶ 12; *Perez v. DNC Parks & Resorts,* 2019 WL 5681169, *4 (finding that DNC Parks & Resorts at Kings Canyon, Inc. has been a federal enclave since June 1, 1945); 16 U.S.C. § 80 (Congress "dedicated and set apart as a public park, to be known as Kings Canyon National Park.")  16 U.S.C. § 80; Cal. Gov't Code § 119 (California ceded to the United States "[e]xclusive jurisdiction . . . over and within all of the territory which is now or may hereafter be included in those several tracts of land in the State of California set aside and dedicated for park purposes by the United States as 'Kings Canyon National Park.'"); *Coso Energy Developers v. Cty. of Inyo*, 122 Cal. App. 4th 1512, 1529 (2004) (stating the California Legislature enacted a statute "ceding jurisdiction over land for Kings Canyon National Park").

16. Because the claims in the Complaint arise on federal enclaves, they "necessarily arise[] under federal law, providing a basis for federal question jurisdiction." *Durham v. Lockheed Martin Corp.*, 2003 WL 25739368 at *1 (*citing to Matter v. Holley*, 200 F.2d 123, 125 (5th Cir. 1952) and *Willis v. Craig*, 555 F.2d 724, 726 at n.4 (9th Cir. 1977)).

## III.    REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT OF 2005

8. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. section 1332(d)(2).  As set forth below, this action is removable, pursuant to 28 U.S.C. section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5 million exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of a Defendant.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B); Leininger Decl., ¶ 6.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.    The Class Action Includes Approximately 1,127 Putative Class Members

9.      A removal under CAFA requires at least 100 members in a putative class. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

10.     Here, Plaintiff seeks to certify the following class of individuals ("Class Members"):

> All California citizens who worked for any Defendant as an hourly or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent.

(Complaint, ¶ 27.)  Based on the filing date of the Complaint on March 28, 2025, the class period covers the time period March 28, 2021 to the present.

11.     Based on the class definition in the Complaint, there are approximately 1,127 putative Class Members.  (Leininger Decl., ¶ 6.)  Thus, there is no question that the size of the proposed class far exceeds the minimum threshold of 100 members under CAFA.

### B.    Plaintiff And Defendants Are Minimally Diverse Under CAFA

12.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

### 1.    Plaintiff Is A Citizen Of California

13.     For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state").  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust*

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

*Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

14.    As Plaintiff admits in the Complaint, "Plaintiff Richard Peraino is a resident of Merced, California . . ."  (Complaint, at ¶ 7.)  Plaintiff's home address during the time period that he worked for DNC Parks & Resorts at Tenaya, Inc. was within the State of California, and the Company did not thereafter receive any information indicating a change of address for him.  (Leininger Decl., ¶¶ 17-18.)

15.    Plaintiff's domicile, and intent to remain domiciled in California is further evident from the fact that he brought this lawsuit in the San Diego County Superior Court.

16.    Therefore, Plaintiff is, and has been at all relevant times a citizen and resident of the State of California.

## 2.    <u>Four Of The Defendants Are Citizens Of New York And/Or Delaware, Not California</u>

17.    For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and also of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities .… [I]n practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

corporation holds its board meetings[.]"  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

18.    Defendant DNC Parks & Resorts At Tenaya, Inc., Delaware North Companies Parks & Resorts, Inc., and Delaware North Companies, Incorporated are citizens of Delaware and New York, not California.  (Leininger Decl., ¶¶ 5, 14,-16.) Defendant DNC Parks & Resorts Fish Camp Lodging, Inc. is a citizen of Delaware, not California.  (Leininger Decl., at ¶ 14.)  Accordingly, Plaintiff and Defendants are minimally diverse under CAFA. ¶

19.    **Doe Defendants.**  Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) ("the unknown defendants sued as 'Does' need not be joined in a removal petition"); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant").  Indeed, the presence of Doe defendants in this case has no bearing on diversity of citizenship for removal.  Thus, the existence of Does 1 to 100 in this case does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal; "For purposes of removal …, the citizenship of defendants sued under fictitious names shall be disregarded").

## C.    <u>The Amount In Controversy Exceeds The Statutory Minimum Of $5 Million</u>

20.    Under CAFA, the claims of individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and

regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

21.    **Preponderance Of The Evidence Standard**. Plaintiff's Complaint does not allege the amount in controversy for the class they seek to represent. When a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *See, e.g., Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional minimum]; *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2

9

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

1    (E.D. Cal. July 14, 2010) (same).

2        22.    To satisfy the preponderance standard, the "defendants' notice of removal

3    need include only a plausible allegation that the amount in controversy exceeds the

4    jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S.

5    81, 88 (2014) (emphasis added).  This burden "is not daunting, as courts recognize that

6    under this standard, a removing defendant is not obligated to research, state, and prove

7    the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d

8    1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate

9    Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of

10    fact's eventual award with one hundred percent accuracy").

11        23.    In determining whether the $5 million CAFA threshold has been met, the

12    court "must accept as true plaintiff's allegations as pled in the Complaint and assume that

13    plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel

14    Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand

15    of a class action for claims under the California Labor Code for missed meal and rest

16    periods, unpaid wages and overtime, inaccurate wage statements, and waiting time

17    penalties).

18        24.    As the Ninth Circuit has explained, "the amount-in-controversy inquiry in

19    the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at

20    1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of

21    the evidence standard applies even "when the plaintiff does not plead a specific amount

22    in controversy"); *Guglielmino*, 506 F.3d at 699 ("where it is unclear or ambiguous from

23    the face of a state-court complaint whether the requisite amount in controversy is

24    pled, …we apply a preponderance of the evidence standard.").

25        25.    In a class action alleging wage and hour violations the Court may assume a

26    100% violation rate in determining whether the CAFA $5 million threshold has been met,

27    if the Complaint includes no fact-specific allegations that would result in a putative class

28    or violation rate that is smaller than 100%.  *See Agredano v. Sw. Water Co.*, 2017 WL

10

2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus . . . Defendants' 'use of a 100% violation rate is proper.'"); *Muniz*, 2007 WL 1302504, at *4 (affirming CAFA removal involving claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting time penalties; "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernably smaller than 100%, used by defendant in its calculations.") (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149-50 (C.D. Cal. 2010), *aff'd sub nom*. 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation;" "Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate," *i.e*., 5 missed meal periods and five missed rest breaks per week ); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) ("The Court is persuaded that Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not qualify her allegations to be on behalf of anything less than all the employees."); *Jones v.*

11

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

*Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (approving the use of a 100 percent violation rate for waiting time penalties where the Complaint alleged class members were owed waiting-time penalties "up to the 30 day maximum.") (internal citation omitted).

26.     The Ninth Circuit has warned district courts that demanding certitude over "assumptions used in calculating the amount in controversy" under CAFA is "inappropriate." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993–94 (9th Cir. 2022) (cautioning against turning "the CAFA removal process into an unrealistic all-or-nothing exercise of guess-the-precise-assumption-the-court-will-pick").

27.     Here, the Complaint includes no allegation regarding the amount in controversy and no allegation that would result in a putative class or violation rate that is smaller than 100%.   Throughout the Complaint, Plaintiff alleges that "not necessarily all" putative class members incurred each alleged violation – vaguely suggesting that a 100% violation rate may be appropriate, but is not "necessarily" so as to all class members.   Complaint, ¶¶ 4 (a) – (g).   Where a Complaint includes limiting language to suggest that a violation rate of something less than 100% may be proper, courts in this Circuit commonly find that violation rate assumptions in the range of 20% or more to be reasonable.   *See Ross v. Tata Consultancy Servs. Ltd*., No. CV 24-0798 FMO (SSCX), 2024 WL 4122273, at *3 (C.D. Cal. Sept. 9, 2024) (Olguin, J.) (denying motion to remand; finding that a 20% violation rate was proper for estimating the amount in controversy under CAFA based on "limiting language" in the Complaint that the violations were suffered by "plaintiff and the Class, or some of them . . ."); *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 974–75 (E.D. Cal. 2023) (denying motion to remand; finding the use of a 24% violation rate reasonable for estimating CAFA amount in controversy, despite "limiting language" in the Complaint asserting that violations occurred "from time to time."); *Eduardo Garcia v. William Scotsman, Inc., et al.*, No. CV 24-02977, 2024 WL 4289895, at *7 (C.D. Cal. Sept. 25, 2024) (noting "a slew of recent cases where courts upheld a 20% violation rate when plaintiff did not specify the

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

frequency of violations" and that "more recent cases. . . have concluded that 100% violation rates for waiting time penalties can be warranted."); *Sanchez v. Abbott Lab'ys*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021) ("courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable").

### Claim For Unpaid Minimum And Straight Time Wages

28.    Plaintiff's first claim for relief alleges that Defendants "fail[ed] to pay compensation for each hour worked" and thereby "willfully violated the provisions of California Labor Code § 1194, and any additional applicable Wage Orders, which require such compensation to non-exempt employees." (Complaint, ¶ 36.)  Plaintiff also alleges that "Plaintiff and some of, but not necessarily all of, the Class are entitled to recover liquidated damages (double damages) for Defendants' failure to pay minimum wages." (Complaint, at ¶ 41.)

29.    Here, 1,127 putative class members have been employed during the class period, at an average hourly rate of pay of $18.60, and have worked approximately 56,649 weekly pay periods.  (Leininger Decl., at ¶¶ 7-8.)  Conservatively assuming that *half* of the pay periods involve a violation of just *one hour* of straight time wages and "double damages" for unpaid minimum wages, the amount in controversy on this claim is at least **$1,580,478** [28,324 pay periods x one hour of pay at 18.60 = $526,826] + [28,324 pay periods x double pay for one hour at 37.20 = $1,053,652].

### <u>Claim For Unpaid Overtime Wages</u>

30.    Plaintiffs' second claim for failure to pay overtime alleges that "Plaintiff and some of, but not necessarily all of, the Class have, at times, worked more than eight hours in a workday and/or more than forty (40) hours in a workweek . . . [but] Defendants failed to pay . . . overtime compensation for the hours . . ."  (Complaint at ¶¶ 47-48.)

31.    Here, 1,127 putative class members have been employed during the class period, at an average hourly rate of pay of $18.60, and have worked approximately 56,649 weekly pay periods.  (Leininger Decl., at ¶¶ 7- 8.)  Conservatively assuming just

13

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

one hour of unpaid overtime per week, the amount in controversy on Plaintiff's overtime claim is at least **$1,580,507** [56,649 workweeks x $27.90 overtime rate for one hour of overtime pay on base hourly rate of $18.60].

### Meal Period Claim

32.     Plaintiff's third claim for meal period violations alleges that "Defendants, at times, failed to provide Plaintiff and some, but not necessarily all of the Class with both meal periods as required by California law" and "made it impossible or impracticable to take uninterrupted meal periods" thereby "violat[ing] the provisions of California Labor Code § 226.7 and the applicable Wage Orders.  (Complaint ¶ 55.)

33.     California law provides that non-exempt employees are entitled to a 30-minute meal period after five hours of work and a second meal period after ten hours of work.  Cal. Lab. Code § 512. Under California Labor Code section 226.7(c), "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law … , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

34.     The statute of limitations for recovery for meal period premium pay under California Labor Code section 226.7 pay is three years.  *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  However, Plaintiff alleges a claim for meal period premium pay as part of her unfair competition claim under Business and Professions Code section 17200, *et seq.* (Complaint, ¶¶ 67-72.)  Thus, according to the allegations of Plaintiff's Complaint, the four-year statute of limitations applies for purposes of removal.  Cal. Bus. & Prof. Code § 17208.

35.     Here, 1,127 putative class members have been employed during the class period, at an average hourly rate of pay of $18.60, and have worked approximately 56,649 weekly pay periods.  (Leininger Decl., at ¶¶ 7- 8.)  Approximately 95% of the

14

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

shifts were in excess of five hours, and were therefore eligible for a meal period. (Leininger Decl., ¶ 9.)  Conservatively assuming just one meal period violation per workweek, the amount in controversy on this claim is: **$1,053,671** [56,649 pay periods x one hour of pay at $18.60].

## Rest Period Claim

36.     Plaintiffs' fourth claim alleges that "Defendants at times failed to authorize Plaintiff and some of, but not necessarily all of, the Class to take rest breaks . . . [and] willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders.  (Complaint, ¶ 59.)

37.     Under California Labor Code section 226.7(c), "[i]f an employer fails to provide an employee a rest or recovery period in accordance with a state law … , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

38.     The statute of limitations for recovery for rest period premium pay under California Labor Code section 226.7 pay is three years.  *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  However, Plaintiff alleges a claim for rest period premium pay as part of her unfair competition claim under Business and Professions Code section 17200, *et seq.* (Complaint, ¶¶ 67-72.)  Thus, according to the allegations of Plaintiff's Complaint, the four-year statute of limitations applies for purposes of removal.  Cal. Bus. & Prof. Code § 17208.

39.     Here, 1,127 putative class members have been employed during the class period, at an average hourly rate of pay of $18.60, and have worked approximately 56,649 weekly pay periods.  (Leininger Decl., at ¶¶ 7- 8.)  Approximately 95% of the shifts were in excess of five hours, and were therefore eligible for a rest period. (Lieninger Decl., ¶ 9.)  Conservatively assuming just one rest period violation in each pay

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

period, the amount in controversy on this claim is: **$1,053,671** [56,649 pay periods x one hour of pay at $18.60].

### Waiting Time Penalties Claim

40.    Plaintiff's fifth claim for waiting time penalties alleges that Defendants "failed, and continue to fail, to pay some of, but not necessarily all of, the terminated Class Members, without abatement, all wages required to be paid by California Labor Code §§ 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." (Complaint, ¶ 63.)  Plaintiff further alleges that Plaintiff and the Class are entitled to "accruing wages for each day they were not paid, at their regular hourly rate of pay, up to thirty (30) days maximum." *Id.* at ¶ 66.

41.    Under California Labor Code section 203, a discharged employee is entitled to penalties of up to 30 days' pay at their regular rate of pay if the employer fails to timely pay all final wages due.  *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay… any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

42.    During the class period, approximately 862 putative class members' employment terminated.  (Leininger Decl., ¶ 6.)  The average rate of pay for these former employees is $18.60 per hour.  *Id*.  Conservatively assuming that only *half* of the terminated employees are entitled to waiting time penalties, the amount in controversy on this claim is **$1,923,984** [$18.60 per hour x 8 hours x 30 days x 431 employees].

### Approximate Aggregate Amount In Controversy Without Fees

43.    Although Defendants deny Plaintiff's allegations that he or the putative class members are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the class, exclusive of attorneys' fees, is at least **$7,192,311.**  The calculation is summarized in the following table:

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

317504003v.1

| Claim | Amount In Controversy |
|---|---|
| Minimum And Straight Time Wages | $1,580,478 |
| Overtime | $1,580,507 |
| Meal Periods | $1,053,671 |
| Rest Periods | $1,053,671 |
| Waiting Time Penalties | $1,923,984 |
| **Total For Statutory Claims, Not Including Fees** | **$7,192,311** |

44.    These calculations do not even include the amounts in controversy for the Plaintiff's claims for wage statement violations, failure to reimburse expenses, or failure to maintain records.  Thus, there is no question that the $5 million amount in controversy threshold under CAFA is met – and greatly exceeded – based on the claims asserted in the Complaint, just for statutory violations, before attorneys' fees are factored into the calculation.

### Attorneys' Fees

45.    Plaintiff also seeks attorneys' fees for each cause of action in the Complaint. (Complaint, Prayer, at ¶¶ 9, 14, 19, 24, 29, 35, 40, 45, 50.)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

46.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy; "Additionally, neither the $6,380,625.10 nor the $12,932,861.00 figures include any amount for the attorneys' fees or punitive damages that are plead in the Complaint and which are properly included in determining the amount in controversy.").

47.     The Ninth Circuit recently held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

48.     Indeed, the Ninth Circuit again more recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

49.     California Labor Code section 218.5(a) states that, "In any action brought for the nonpayment of wages…the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action."

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

50.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a reasonable benchmark for an attorneys' fees award. *See, e.g.*, *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *28-29 (N.D. Cal. Apr. 1, 2011) ("[T]here is ample support for adjusting the 25% presumptive benchmark upward to take into account the complexity and duration of the litigation, counsel's skill and experience, the results achieved that include both monetary and injunctive relief, and the positive reaction and low opt-out rate of the class."); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6-7 (C.D. Cal. July 27, 2010) ("Overall, although this percentage is slightly higher than the 25% benchmark for fees in class action cases, it is consistent with other wage and hour class actions."); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) ("The percentage is to be set by the court with reference to the Ninth Circuit's "benchmark" of 25 percent.") (internal citation omitted).

51.    Here, a 25% attorney fee recovery on a judgment for the Plaintiff's claims for unpaid minimum, straight time and overtime wages, meal and rest period violations, and waiting time penalties equals **$1,798,077**, which brings the total amount in controversy up to **$8,990,388.**  This calculation is summarized in the following table:

| **Claim** | **Amount In Controversy** |
|---|---|
| Minimum And Straight Time Wages | $1,580,478 |
| Overtime | $1,580,507 |
| Meal Periods | $1,053,671 |

19

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

| | |
|---|---|
| Rest Periods | $1,053,671 |
| Waiting Time Penalties | $1,923,984 |
| Attorneys' Fees | $1,798,077 |
| **Grand Total In Controversy** | **$8,990,388** |

52.     Accordingly, in addition to the fact that this Court has original federal question jurisdiction over this matter due to the fact that some Defendants are federal enclaves, the Court also has jurisdiction under CAFA because minimal diversity of citizenship exists, there are more than 100 putative class members, and the amount in controversy exceeds $5 million.

53.     To the extent that Plaintiffs have alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.    VENUE

54.     Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c).  This action was originally brought in the San Diego County Superior Court, which is located within the Southern District of California.  28 U.S.C. § 84(c).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

## V.    NOTICE TO STATE COURT AND TO PLAINTIFF

55.     Pursuant to 28 U.S.C. section 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and all counsel of record, together with a copy of the Notice of Removal, and will be filed with the Clerk of the San Diego County Superior Court.

56.     This Notice of Removal will be served on counsel of record for all parties. A Certificate of Service regarding the Notice of Removal and supporting documents will

20

1  be filed concurrently.

2  **VI.**  **PRAYER FOR REMOVAL**

3  WHEREFORE, Defendants pray that this civil action be removed from the San

4  Diego County Superior Court to the United States District Court for the Southern District

5  of California.

6

7  DATED: May 2, 2025                        Respectfully submitted,

8                                            SEYFARTH SHAW LLP

9

10  By:*/s/ Bethany A. Pelliconi*
    Jon D. Meer
11  Bethany A. Pelliconi
    Attorneys for Defendants DNC PARKS
12  & RESORTS AT TENAYA, INC.,
    DNC PARKS & RESORTS
13  RESERVATIONS, INC., DNC PARKS
    & RESORTS AT ASILOMAR, INC.,
14  DNC PARKS & RESORTS AT
    KINGS CANYON, INC., DNC
15  PARKS & RESORTS AT SEQUOIA,
    INC., DNC PARKS & RESORTS
16  FISH CAMP LODGING, INC.,
    DELAWARE NORTH COMPANIES
17  PARKS & RESORTS, INC., AND
    DELAWARE NORTH COMPANIES,
18  INCORPORATED

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION

317504003v.1