1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RICHARD PERAINO, individually and on behalf of others similarly situated,

                    Plaintiffs,

v.

DNC PARKS & RESORTS AT TENAYA, INC. et al.,

                    Defendants.

Case No.: 25-cv-1130-JES-DEB

**ORDER DENYING MOTION TO REMAND**

**[ECF No. 10]**

     Pending before the Court is Plaintiffs' motion to remand the case to state court. ECF No. 10. Defendants filed an opposition and Plaintiffs filed a reply. ECF Nos. 12, 16. On June 18, 2025, the Court held a motion hearing, took the matters under submission, and ordered the parties to file supplemental briefing. ECF No. 14. The parties filed supplemental briefs in accordance with that order. ECF Nos. 21-22. After due consideration and for the reasons discussed below, the motion to remand is **DENIED**.

## I.     BACKGROUND

     On March 28, 2025, Plaintiff Richard Peraino ("Peraino"), on behalf of himself individually and others similarly situated, initiated a wage and hour class action lawsuit in the Superior Court of California, San Diego County. ECF No. 1-2, Ex. A ("Compl."). The original lawsuit sued eight Defendants: (1) DNC Parks and Resorts at Tenaya, Inc.; (2)

DNC Parks & Resorts Reservations, Inc.; (3) DNC Parks & Resorts at Asilomar, Inc.; (4) DNC Parks & Resorts at Kings Canyon, Inc.; (5) DNC Parks and Resorts at Sequoia, Inc.; (6) DNC Parks & Resorts Fish Camp Lodging, Inc; (7) Delaware North Companies Parks & Resorts, Inc.; and (8) Delaware North Companies, Incorporated. *Id.* Two of the Defendants, DNC Parks & Resorts at Sequoia, Inc. and DNC Parks & Resorts at Kings Canyon, Inc., have since been dismissed from the case. ECF No. 6.

Plaintiff alleges that he is a resident of Merced, California, and worked for Defendants in Mariposa County, California, as an hourly-paid, non-exempt employee from April 2024 to approximately November 2024. Compl. ¶ 15. He seeks to represent a class that he proposes to be defined as "All California citizens who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." *Id.*

The complaint alleges that Defendants would regularly schedule Plaintiff to work at least eight hours a day and at least five days a week, and he would regularly work more than eight hours a day and more than forty hours in a given week. *Id.* ¶ 15. Plaintiff alleges that Defendants, at times, failed to pay him for all hours worked (including minimum, straight time, and overtime wages), failed to provide him with complaint meal periods, failed to permit him to take rest periods, failed to pay him final wages upon termination, failed to provide accurate wage statements to him, failed to indemnify him for expenditures, and failed to produce requested employment records. *Id.* ¶ 16; *see also id.* ¶¶ 17-24.

Based on this alleged course of conduct, Plaintiffs allege causes of action for: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize rest periods; (5) waiting time penalties; (6) failure to maintain and provide accurate wage records; (7) failure to indemnify employees for expenditures; (8) failure to produce employment records; and (9)

violation of California Business and Professions Code §§ 17200 et seq.; and (8) for declaratory relief. *Id.* ¶¶ 34-106.

This case was removed by Defendants to this Court on May 2, 2025. ECF No. 1. On May 9, 2025, the remaining Defendants filed an answer. ECF No. 7. On May 19, 2025, Plaintiff filed this currently pending motion to remand. ECF No. 10.

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). In a case originally brought in state court, a defendant may remove the action to federal court if there is federal subject matter jurisdiction. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). "A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing 28 U.S.C. § 1447(c)).

Defendants remove the case under the Class Action Fairness Act ("CAFA"). CAFA gives federal courts jurisdiction over certain class actions if (1) the class has more than 100 members, (2) the parties are minimally diverse, and (3) the amount in controversy exceeds $5,000,000. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Minimal diversity under this section of 1332 requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) (citing 28 U.S.C. § 1332(d)(2)). Under CAFA, unlike with other diversity jurisdiction, there is no presumption against removal jurisdiction. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Regardless, "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

///

## III.    DISCUSSION

In this motion, Plaintiffs raise two main arguments for why this case should be remanded back to state court: (1) Defendants cannot show that the amount in controversy requirement is satisfied; and (2) even if it was, the local controversy exception to CAFA jurisdiction applies and the case still must be remanded.[1] ECF No. 10. The Court will address each in turn.

### A.    Amount in Controversy

Plaintiffs challenge the calculations that Defendants put forth in their Notice of Removal to support that the amount in controversy here exceeds the required $5,000,000. Where a plaintiff challenges the defendant's allegation of jurisdiction under § 1332(a), § 1446 provides that "removal of the action is proper on the basis of an amount in controversy asserted [in the notice of removal] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B); *see Dart*, 574 U.S. at 88. In *Dart*, the Supreme Court recognized that this provision was added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 to "clarify[] the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* The evidence that the Court may consider here include "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193,

---

[1] Plaintiffs also originally raised another ground for removal based on federal enclave. *See* ECF No. 1 at 4-6. However, this ground arose from two defendants, DNC Parks & Resorts at Sequoia, Inc. and DNC Parks & Resorts at Kings Canyon, Inc., who have since been dismissed from the case. ECF No. 6. In addition, Defendants do not defend this ground in their opposition. ECF No. 12. Thus, the Court considers this ground abandoned and will not address it in this order.

1197 (9th Cir. 2015) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

Defendants' calculations are as follows. Their Notice of Removal was substantiated with a declaration from Kent Leininger, a Regional Director of Human Resources for Delaware North Companies & Resorts, Inc. ECF No. 1-3. He stated that based on his review of employee records, there was 1,127 non-exempt hourly employees employed by DNC Parks & Resorts at Tenaya Inc. since March 28, 2021, the beginning of the class period. *Id.* ¶ 6. He also stated that the average hourly rate of such employees during this time frame is $18.60. *Id.* ¶ 7. He calculated that these employees were paid weekly and have worked a total of approximately 54,649 weekly pay periods since the start of the class period. *Id.* ¶ 8. He also calculated that the average length of a shift is 7.8 hours, with 95% of the shifts being in excess of 5 hours. *Id.* ¶ 9. Based on these assumptions, Defendants calculate the various categories of damages:

(1) <u>Unpaid Minimum and Straight Time Wages</u>: Defendants assumed that 50% of the pay periods (i.e., 28,324) involve a violation of one hour of straight time wages (i.e. $18.60) and one hour of double damages for unpaid minimum wages (i.e. $37.20). *Id.* ¶ 29. The calculation is therefore 28,324 x ($18.60 + $37.20) = $1,580,478. *Id.*

(2) <u>Overtime wages</u>: Defendants assumed one hour of unpaid overtime a week. *Id.* ¶ 31. Wage per hour calculated at 1.5 times the hourly rate is $27.90. The calculation is therefore 56,649 x $27.90 = $1,580,507. *Id.*

(3) <u>Meal Period</u>: Defendants state that California law provides for a 30-minute meal period after every 5 hours of work, and a second meal period after 10 hours of work. *Id.* ¶ 33 (citing Cal. Lab. Code § 512). If an employer fails to provide a meal period as required, it must pay the employee one additional hour of work at the regular hourly rate. *Id.* (citing Cal. Lab. Code § 226.7(c)). Defendants made this calculation over a period of 4 years. *Id.* ¶ 34. Defendants assumed that one

missed meal period violation in a pay period. *Id.* ¶ 35. This calculation is therefore 56,649 x $18.60 = $1,053,671. *Id.*

(4) <u>Rest Period</u>: Defendants make the same assumptions for rest periods as they do with meal periods. Assuming one missed rest period in a pay period, the calculation is also 56,649 x $18.60 = $1,053,671. *Id.* ¶ 39.

(5) <u>Waiting Time Penalties</u>: Defendants state that California law imposes a penalty of up to 30 days' pay at an employees' regular rate if the employer fails to timely pay final wages due. *Id.* ¶ 41 (citing Cal. Lab. Code §203(a)). Defendants calculated that during the class period, 862 employees were terminated. *Id.* ¶ 42. Defendants assumed that half of these terminated employees are entitled to waiting time penalties. *Id.* This calculation is therefore $18.60 x 8 hours x 30 days x 431 employees = $1,923,984. *Id.*

(6) <u>Attorneys' Fees</u>: Defendants state the attorneys' fees should be included in the amount in controversy calculation because they are provided for by statute. *Id.* ¶ 49 (citing Cal. Lab. Code § 218.5). They state that a 25% rate based on the aggregate amount of amount of controversy is reasonable. *Id.* ¶ 50.

(7) <u>Total</u>: The total amount in aggregated wages/penalties based on the above is $7,192,311. *Id.* ¶ 43. Attorneys' fees based on that amount is $1,798,077. *Id.* ¶ 51. Thus, Defendants state that the calculated amount in controversy is $8,990,388. *Id.*

Plaintiffs challenge each of these calculations, primarily by attacking the assumptions that Defendants made in making their calculations.

The Ninth Circuit recently addressed how a court is to evaluate the reasonableness of assumptions in CAFA amount in controversy calculations in *Perez v. Rose Hill Co.*, 131 F.4th 804 (9th Cir. 2025). In *Perez*, the plaintiff did include specific allegations in the complaint regarding the frequency of the various alleged wage and hour violations, and only stated that the defendant violated them "at times" and "throughout the statutory period." *Id.* at 806. In its CAFA jurisdiction calculations, the defendant assumed that

"every week during the class period, it failed to pay all class members for one hour of regular time, one hour of overtime, a one-hour compensable meal break, and a one-hour compensable rest break." *Id.* at 806-807. The court explained that the amount in controversy is "simply an estimate of the total amount in dispute"—because a defendant will ultimately argue that its liability is zero, it "need not present evidence of what its ultimate liability will be." *Id.* at 808. Rather, established cases permit a defendant to "rely on a chain of reasoning that includes assumptions to calculate the amount in controversy." *Id.* (citations and internal quotation marks omitted). The assumptions must be "founded on the allegations of the complaint" and a defendant's "reasoning and underlying assumptions [must be] reasonable." *Id.* (citation omitted).

*Perez* further expounded on what is a reasonable assumption for violation rates. *Id.* ("[I]t makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the alleged violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist. For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint.") The *Perez* court found the assumptions made by the defendant to be sufficiently tethered to the language in the complaint that the violations occurred "at times." *Id.* at 809. The court further explained that the assumptions do not have to be the *only* reasonable assumption: "an assumption is not unreasonable simply because another equally valid assumption may exist." *Id.* at 809-10 ("It may be true that the phrase 'at times' could support a lower violation rate as easily as it could support the violation rate that Rose Hills assumed. But that does not automatically render the rate assumed by Rose Hills unreasonable.").

With these standards in mind, the Court turns to the substance of the parties' specific arguments in this case.

### 1. Straight time, minimum, and overtime wages

For each of these categories, Plaintiffs allege in their complaint that "[t]houghout Plaintiff's employment, Defendants, *at times*, failed to pay Plaintiff for all hours worked (including minimum, straight time, and overtime wages)." Compl. ¶ 16 (emphasis added).

Plaintiffs also allege that "[t]hroughout the statutory period, Defendants, *at times*, failed to pay Plaintiff and *some of, but not necessarily all of*, the Class for all hours worked, including minimum, straight time, and overtime wages." *Id.* ¶ 17 (emphasis added). Plaintiffs use this phrasing throughout the complaint to describe the frequency of these violations. *See id.* ¶¶ 36-42; 47-52. Based on these allegations, Defendants assumed one hour of straight and minimum wage violation for 50% of the weekly pay periods and one hour of overtime wage violation for each weekly pay period. *Id.* ¶¶ 29, 31.

Based on *Perez* and the district cases that have considered similar allegations after *Perez* was decided, the Court finds that Defendants' assumptions for these violations to be reasonable. "Numerous district courts have concluded, reviewing complaints alleging violations 'at times' or using similar language, that an assumption of at least one violation per week for various wage and hour claims—such as for unpaid overtime, unpaid minimum wages, and meal and rest period claims—was reasonable." *Carroll v. Ameri-Force Craft Serv., Inc.*, No. 24-cv-1443-RSH-DTF, 2025 WL 2621704, at *5 (S.D. Cal. Sept. 11, 2025) (citing cases); *see also McGill v. Walgreens Co.*, No. EDCV 25-1422-KK-SPX, 2025 WL 2413970, at *3-4 (C.D. Cal. Aug. 20, 2025) (finding assumption of 20% violation reasonable based on "at times" language reasonable and citing cases); *Santos v. Pictsweet Co.*, No. 2:25-CV-03181-AB-SSC, 2025 WL 2424357, at *6 (C.D. Cal. Aug. 20, 2025) (citing cases approving of assumption of once a week); *Nguyen v. SMTC Mfg. Corp. of California*, No. 24-CV-07394-JST, 2025 WL 2238033, at *5 (N.D. Cal. Aug. 6, 2025) ("Although other courts have approved either more or less generous assumptions, the 20% rate appears to represent the median."); *Sumo v. PSL Assocs., LLC*, No. 25-5436-BHS, 2025 WL 2624531, at *2 (W.D. Wash. Sept. 11, 2025) ("20% violation rate 'broadly consistent' with 'at times' language in a complaint"). Of note, courts in particular have accepted similar assumptions where Plaintiffs only attack Defendants' assumptions, but fails to provide their own reasonable alternative. As the *Perez* court noted, "if [Plaintiff] believed that some other assumption would have been *more* reasonable, she was free to

propose that rate," and the "district court could then have weighed the evidence and arguments in deciding which assumption was more appropriate." 131 F.4th at 810.

Plaintiffs argue that Defendants' assumptions regarding these violations are duplicative because they interpret Defendants' assumptions as asking for "overtime wages *and* straight time wages *and* liquidated damages at the straight time wage rate for the same off-the-clock work." ECF No. 10 at 14. They point out that the assumption that straight time/liquidated damages is calculated at one hour for 50% of the pay periods contradicts the assumption that overtime damages is calculated at one hour for 100% of the pay periods. *Id.* To support their argument that these violations are all calculated off the *same* hour of work, Plaintiffs cite to the following paragraph in their complaint:[2]

> 17. Throughout the statutory period, Defendants, at times, failed to pay Plaintiff and some of, but not necessarily all of, the Class for all hours worked, including minimum, straight time, and overtime wages. <u>Defendants would, at times, manufacture time keeping records to falsely show that Plaintiff and some of, but not necessarily all of, the Class took meal periods when in fact they worked "off-the-clock," uncompensated.</u> The effect is that Plaintiff and some of, but not necessarily all of, the Class worked through meal periods "off-the-clock," and <u>continued to work after they had clocked out for the workday</u>. Defendants paid Plaintiff and some of, but not necessarily all of, the Class less than all their work time. Some of this unpaid work should have been paid at the overtime rate. In failing to pay for all hours worked, Defendants also failed to maintain accurate records of the hours Plaintiff and some of, but not necessarily all of, the Class worked.

Compl.t ¶ 17 (emphasis added). Plaintiffs argue that this paragraph supports the allegation that "Plaintiff and other class members at times worked through their meal periods, which resulted in off the clock work." ECF No. 10 at 14.

---

[2] Plaintiffs' citation to this paragraph in their motion is not a complete and full quotation of this whole paragraph. *See* ECF No. 10 at 14 (citing Complaint ¶ 17). The Court quotes the full paragraph here, as it finds that some of the missing language is germane to the issue.

The Court does not read the allegations to be so narrow. Plaintiffs appear to argue that the unpaid time they claim (whether straight or overtime) arises because Defendants fabricated records to falsely show that Plaintiffs received a meal period but they actually worked through that period. But the above paragraph also includes the statement that some Plaintiffs "continued to work after they clocked out for the workday." Plaintiffs fail to explain how this statement is tethered to their argument in the motion that the sole allegation supporting the straight time and overtime claims are due to missing a meal period. Indeed, this allegation in the complaint reads as reasonably, if not more reasonably, as supporting an additional claim that some of the class at times also worked off the clock hours after they clocked out for the workday, which would not be duplicative of the allegation that some of the class at times worked through their meal period. Furthermore, Plaintiffs chose to include two separate counts, one for minimum and straight time wages and one for overtime wages, and the allegations under each of those counts do not limit the off the clock work to missing meal periods either. *See generally* Complaint ¶¶ 34-52. Thus, the Court finds that Defendants' assumptions regarding the two separate categories of violations reasonable based on the allegations in the complaint. Even if Plaintiffs' interpretation was reasonable, however, it does not preclude a finding that Defendants assumptions, as long as tethered to the complaint, can be reasonable as well. *See Perez*, 131 F.4th at 810 ("It may be true that the phrase 'at times' could support a lower violation rate as easily as it could support the violation rate that Rose Hills assumed. But that does not automatically render the rate assumed by Rose Hills unreasonable.").

The Court does find issue with Defendants' straight time and liquidated damages calculations, however. Defendants included liquidated damages in this calculation, assuming that it was double the hourly rate, citing to Cal. Lab. Code § 1194.2. *See* Compl. ¶ 41; ECF No. 1 ¶ 29. Thus, Defendants' calculation multiplied the average hourly rate with the pay periods and then tripled the result—essentially once for the violation itself and then twice for the liquidated damages. This does not comport with section 1194.2, which states that "an employee shall be entitled to recover liquidated damages in <u>an amount</u>

equal to the wages unlawfully unpaid and interest thereon." (emphasis added). This provision, by its plain text, only provides for an additional amount equal to the wages unlawfully withheld as the liquidated damages penalty, not double the amount. *See Djukich v. AutoNation, Inc.*, No. CV1304455BROAGRX, 2014 WL 12845830, at \*6 (C.D. Cal. Nov. 12, 2014) ("Because section 1194 already provides employees with the means to recover unpaid minimum wages, section 1194.2's grant of liquidated damages amounts to an additional award and essentially doubles the award under section 1194."); *Yorba v. Gov't Emps. Ins. Co.*, No. 24-CV-00031-GPC-VET, 2024 WL 3442416, at \*5 (S.D. Cal. July 17, 2024) ("When employers pay employees less than the minimum wage, they are subject to liquidated damages equal to the wages unlawfully unpaid. In short, liquated damages double the recovery for the plaintiff.") (citation omitted); *see also Martinez v. Combs*, 49 Cal. 4th 35, 48 n.8 (2010) ("The 'liquidated damages' allowed in section 1194.2 are in effect a penalty equal to the amount of unpaid minimum wages.").

Thus, adjusting the calculations based on this, the new amount including liquidated damages would be 28,324 x $18.60 x 2 = $1,053,652.

### 2. Meal and rest periods

For meal and rest periods, Plaintiffs' allegations in the complaint uses similar language as to the minimum wage and overtime allegations—stating that violations occurred "at times" and to "some, but not necessarily all" of the Class. Complaint ¶¶ 18, 19, 55, 59. Based on this language, Defendants again assumed a violation rate for both meal periods and rest periods of once per pay period. ECF No. 1-3 ¶¶ 35, 39.

For the reasons stated above, the Court also finds this assumption to be reasonable. *See McGill*, 2025 WL 2413970, at \*3-4 (approving of 20% violation rate for meal and rest periods where complaint used "at times" language for frequency of violations); *Duncan v. Baxalta US Inc.*, No. 2:24-CV-09388-RGK-AS, 2025 WL 40482, at \*2 (C.D. Cal. Jan. 7, 2025) ("The Court finds that a 20% violation rate is consistent with the allegations in the Complaint suggesting that only 'some' class members were subject to meal and rest break violations 'at times.'"); *Santos*, 2025 WL 2424357, at \*5 (approving of 20% violation rate

1   for meal and rest periods and noting "ample caselaw" to support rate based on "at times"

2   language); *Carroll*, 2025 WL 2621704, at *5 (approving once a week violation of meal

3   and rest periods and citing cases similarly holding).

4        Plaintiffs cite to several cases that rejected similar assumptions to the ones that

5   Defendants made here as to meal and rest periods. ECF No. 10 at 15-16. While there are

6   district cases that have held that a 20% assumption is not supported by similar allegations

7   in the complaint, many if not all of the cases that Plaintiffs cite are pre-*Perez* and *Perez*

8   makes clear that where a plaintiff "believe[s] that some other assumption would have been

9   more reasonable, she was free to propose that rate" or "was also free to use some more

10  specific phrase than 'at times' when drafting the complaint . . . [to] constrain[] the range of

11  assumption that [the defendant] could reasonably adopt." *Perez*, 131 F.4th at 810. Given

12  the cases discussed above that approve of a 20% violation assumption and Plaintiffs having

13  failed to propose another "reasonable" alternative here, the Court cannot find that

14  Defendants assumptions are unreasonable. *Id.* Accordingly, the Court finds adequate

15  support in the complaint for Defendants' meal and rest period calculations.

16              **3.  Waiting time penalties**

17       The next category of damages is waiting time penalties, which Defendants calculated

18  by assuming that half of the 862 employees that were terminated during the relevant

19  timeframe would be entitled to these penalties. ECF No. 1-3 ¶¶ 42. Plaintiffs again attack

20  this assumption by arguing that it is not reasonable to link the "at times" and "some, but

21  not necessarily all" of the class language in the complaint to a 50% penalty rate and that

22  each affected employee would get the full penalty. ECF No. 10 at 16-17.

23       Regarding waiting time penalties, many district courts within this Circuit have

24  approved of rates up to 100% for waiting time penalties. Specifically, where the waiting

25  time penalty allegations are tied to the other claims of failure to pay for overtime, minimum

26  wage, or meal and rest period breaks, they have held that it is reasonable to assume

27  everyone who was terminated suffered at least one violation. *See, e.g.*, *Cavada v. Inter-*

28  *Cont'l Hotels Grp.*, Inc., No. 19cv1675-GPC(BLM), 2019 WL 5677846, at *9 (S.D. Cal.

Nov. 1, 2019) ("Because the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate, that each employee suffered at least one violation, is based on a reasonable assumption."); *Gonzalez v. Barnard Construction Co.*, No. 22-cv-00534-AJB-KSC, 2022 WL 17061065, at *3 (S.D. Cal. Nov. 17, 2022) ("Even if Defendants did use a 100% violation rate, other district courts have concluded that allegations of the willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations) were sufficient to support estimations of waiting time penalties at a 100% rate."); *La Grow v. JetBlue Airways Corp.*, No. 24-cv-00518, 2024 WL 3291589, at *5 (C.D. Cal. July 3, 2024) ("Courts in the Ninth Circuit have found both a 100% assumed violation rate and using the maximum 30-day recovery period for waiting time penalties to be reasonable."); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, [plaintiff] makes [defendant's] assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [defendant] during the statutory period was due unpaid wages.").

With this case law, and again no alternative reasonable assumption proposed by Plaintiffs, the Court finds Defendants' assumption of using 50% of terminated employees in the waiting penalty calculation reasonable. In addition, the assumption of using the full 30-day period to calculate this penalty is reasonable as well. *See Chavez*, 2019 WL 1501576, at *4 (approving use of maximum 30-day penalty).

In their supplemental briefing that was submitted after the oral argument, Plaintiffs raised one additional argument as to the waiting time penalty that the statute only provides for a three-year penalty period, not four-year as Defendants assumed, so the terminated employees that are entitled to this penalty must be reduced by 25%, from 862 to 575, which would have the effect of reducing the total calculation by 25%. ECF No. 22 at 4-5. As to this issue, the Court finds Plaintiffs' position meritorious. Waiting time penalties are subject to a three-year statute of limitations. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th

1389, 1395 (2010) ("Actions for final wages not paid as required by sections 201 and 202 are governed by Code of Civil Procedure section 338, subdivision (a), which provides that a three-year statute of limitations applies to '[a]n action upon a liability created by statute, other than a penalty or forfeiture.'"). Thus, the Court accepts Plaintiffs' proposition in their supplemental brief to adjust this number downward by 25%. *See Carroll*, 2025 WL 2621704, at *3 (accepting downward 25% discount calculation for waiting time penalty based on total number of employees in 4-year period).

Accordingly, the new amount for waiting time penalties would be $18.60 x 8 x 30 x 431 x 0.75 = $1,442,988.

### 4. Attorneys' fees

The final category of amount in controversy calculation is the inclusion of attorneys' fees, which Defendants calculated based on a 25% fee rate assumption. ECF No. 1-3 ¶ 50. Plaintiffs argue that, first, the fee calculation must be supported with summary judgment type evidence, which Defendants fail to do here, and second, even if 25% was a reasonable assumption, it should not be used here because the underlying damages calculations are so unreasonable. ECF No. 10 at 17.

The arguments that Plaintiffs rely upon have been rejected by other district courts. For example, in *Santos*, a post-*Perez* case, the court squarely rejected that the same Ninth Circuit cases cited by Plaintiffs here foreclose a 25% rate assumption. 2025 WL 2424357, at *6 (rejecting reliance on *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, at 764 (9th Cir. 2013) and *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018)). The *Santos* court continued on to cite a string of recent cases within the Ninth Circuit that have approved of a 25% rate in CAFA calculations. *See also Tijerina v. United Airlines, Inc.*, No. 24-CV-02466-BEN-SBC, 2025 WL 1355308, at *4 (S.D. Cal. May 9, 2025) (similarly rejecting argument relying on *Fritsch* and approving of 25% benchmark).

The Court agrees here. The weight of the authority and consensus among courts within this Circuit support a 25% rate assumption. *See Santos*, 2025 WL 2424357, at *6

(approving 25% and collecting cases); *Tijerina*, 2025 WL 1355308, at *4 (same); *Carroll*, 2025 WL 2621704, at *5 (same). Accordingly, the Court finds adequate support for Defendants' attorneys' fees calculation.

### 5. Final Calculation

Based on the foregoing, including modifications, the final calculation is summarized below:

| Minimum/Straight Time | 28,324 x $18.60 x 2 | $1,053,652 |
|---|---|---|
| Overtime | 56,649 x $27.90 | $1,580,507 |
| Meal Period | 56,649 x $18.60 | $1,053,671 |
| Rest Period | 56,649 x $18.60 | $1,053,671 |
| Waiting Time Penalty | $18.60 x 8 x 30 x 431 x 0.75 | $1,442,988 |
| | SUBTOTAL: | $6,184,489 |
| Attorneys' Fees | x 25% | $1,546,122 |
| | TOTAL: | $7,730,611 |

There is one final issue raised regarding the amount in controversy regarding the class size. In Defendants' Notice of Removal, they assumed a class size of 1,127 based on review of company records during the relevant time period. ECF No. 1-3 ¶ 6. Plaintiffs did not directly challenge this class size in their motion to remand. *See generally* ECF No. 10. In Defendants' opposition to the motion to remand, they provide another declaration by a company representative who stated that "based on my review of Defendant DNC Parks & Resorts at Tenaya, Inc.'s personnel records, more than 1/3 of the non-exempt employees who have worked for Defendant DNC Parks & Resorts at Tenaya, Inc. during the Class Period reported a residence address in a state other than California, or worked through J1 or H2B temporary work Visas and were residents of other countries outside the United States." ECF No. 12-1 ¶ 4. This new statement was not referenced in Defendants' opposition to the amount in controversy requirement, but rather referenced in Defendants' opposition for the local controversy exception to CAFA jurisdiction (*see* ECF No. 12 at

16-19), which the Court will address separately below. Regardless, based on this new statement by Defendants' representative, Plaintiffs responded in their reply brief that Defendants are essentially admitting that more than 1/3 of the class they assumed may not be California residents, and as such, cannot be part of the class which is specifically defined to include only California residents. ECF No. 16 at 11. Accordingly, they attack the use of the 1,127 number in the amount in controversy calculations. *Id.* at 11-12.

In their supplemental briefing permitted after oral argument in the case, both parties essentially submit calculations based on reducing the class size by a 1/3, from 1,127 down to 752 class members, which also reduces the pay periods from 54,649 down to 36,443. ECF No. 22 at 4; ECF No. 21 at 4. This has the effect of essentially reducing the calculation by 1/3 for each category. Thus, if the Court were to apply it to its calculation as detailed above, the total would reduce down from $7,730,611 by 1/3 to $5,153,740—which still satisfies the $5 million CAFA requirement.

## B.    Local Controversy Exception

Having found that the amount in controversy for CAFA jurisdiction is met, the Court must now turn to Plaintiffs second argument for remand. Plaintiffs argue that even if the other requirements of CAFA were met, this case must be remanded to state court because it falls within the requirements of the local controversy exception to CAFA. "The local controversy exception to CAFA jurisdiction is a narrow exception, and Plaintiff[] bear[s] the burden of showing its application." *Allen v. Boeing Co.*, 821 F.3d 1111, 1116 (9th Cir. 2016) (citing *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015)). If the exception applies, however, the court must remand the case to state court. *Id.*

Under this exception, a "district court shall decline to exercise jurisdiction" under CAFA for a class action where:

> (I)    greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

> (II)    at least 1 defendant is a defendant--

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(II)    principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

28 U.S.C. § 1332(d)(4)(A)(i). Further, the statute requires that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." *Id.* § 1332(d)(4)(A)(ii).

As applied here, there are two defendants out of the six remaining defendants who are citizens of California, DNC Parks & Resorts Reservations, Inc. and DNC Parks & Resorts at Asilomar, Inc. Thus, the Court must determine whether their inclusion in this action invokes the local controversy exception to CAFA jurisdiction.

### 1. Two-Thirds of Class are Citizens

As to the first requirement that two-thirds of the proposed class are citizens of the State, this is satisfied because the class is defined by Plaintiffs to be "All California *citizens* who worked for any Defendant in California as an hourly-paid or non-exempt employee" during the relevant time period. Compl. ¶ 15 (emphasis added); *Benko*, 789 F.3d at 1118 (finding requirement "easily met" where class was defined to be limited to citizens of the state).

### 2. "Significant Basis" and "Significant Relief"

The next two sections of the local controversy statute require a showing that the in-state defendants are defendants whom a "significant relief" is sought and whose alleged conduct forms a "significant basis" for the asserted claims. 28 U.S.C.

§§ 1332(d)(4)(A)(i)(bb), (cc). For both of these requirements, courts are limited to reviewing the allegations in the complaint. *Coleman v. Estes Express Lines*, 631 F.3d 1010, 1012 (9th Cir. 2011).

In *Coleman*, the Ninth Circuit addressed these requirements in a wage and hour case where one of two defendants was a local defendant. First, the court held that the complaint sufficiently sought "significant relief" from the in-state defendant where "complaint seeks damages equally" from each defendant. *Id.* at 1020. The court noted that the in-state defendant did not appear to be a nominal defendant and that the complaint also sought injunctive relief after the defendants, including the in-state defendant. *Id.* Second, the court also found that the local defendant's conduct "forms a significant basis" for the asserted claims where the complaint alleged that the defendant "employed the putative class members during the relevant period, and [] violated California law in a number of ways with respect to those employees." *Id.* The court noted that the same allegations were charged against the other out-of-state defendant as well, but that "in no way make the allegations against [the local defendant], the actual employer, insignificant." *Id.*

Following *Coleman*, in *Benko*, the Ninth Circuit again addressed these two requirements. For "significant relief," *Benko* confirmed that the court should "look to the remedies" requested in the complaint. 780 F.3d at 1119. The court concluded that "significant relief" was sought from in-state defendant where significant damages were sought, along with injunctive relief. *Id.* For "significant basis," the court stated that should be a "comparative approach" that "look[s] at a defendant's 'basis' in the context of the overall 'claims asserted.'" *Id.* at 1118. Applying this approach, the court found a sufficient significant basis where the in-state defendant's activities constituted 15-20% of the debt collection activities of all the defendants in total. *Id.* at 1119.

Thus, this Court looks to only the allegations in the complaint as to the allegations against in-state defendants, DNC Parks & Resorts Reservations, Inc. and DNC Parks & Resorts at Asilomar, Inc. The complaint does not make any specific allegations against either of these defendants separate and apart from the allegations made against all

defendants. The complaint alleges that "each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and the other employees . . . and exercised control over their wages, hours, and working conditions." Complaint ¶ 12. Plaintiff further alleges that "each Defendant was the principal, agent, partner, joint venturer, joint employer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below." *Id.* Thus, Plaintiffs allege that "each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided, and abetted the conduct of all other Defendants." *Id.* The remainder of the complaint uses the term "Defendants" to detail the specific wage and hour violations alleged.

District courts facing a similar context of wage and hour claims equally asserted against multiple defendants have not consistently reached the same conclusion as to whether such claims against an in-state defendant would form a "significant basis" or "significant relief." For example, in *Adame v. Comprehensive Health Management, Inc.*, the plaintiffs brought a wage and hour class action lawsuit against several defendants, two of which were citizens of California. No. CV 19-00779-CJC(SKX), 2019 WL 1276192, at *1 (C.D. Cal. Mar. 19, 2019). Allegations were not specifically made as to each defendant: "Plaintiff asserts that all three Defendants employed Plaintiff and that unnamed John Does acted upon each Defendant's behalf to establish or ratify unlawful pay practices." *Id.* at *3. In evaluating the "significant relief" prong, the court held that a plaintiff fails to establish it where "the complaint lacks sufficient specificity to determine what conduct is attributable to what defendant or how damages might be apportioned." *Id.* The court found that "[t]he mere fact that Plaintiff seeks relief from all Defendants jointly and severally, without any factual allegations specific to [the in-state defendants], is insufficient to meet

her burden to prove that the narrow local controversy exception applies." *Id.* In evaluating the "significant basis" prong, the court similarly found that the lack of specific allegations for the in-state defendants, coupled with allegations that all Defendants jointly employed her and only "bare and conclusory allegations" regarding joint employment was not sufficient to establish this prong either. *Id.* at *4.

In contrast, in *Garcia v. Task Ventures, LLC*, the court reached the opposite conclusion on both prongs on similar facts. No. 16-CV-809-BAS(JLB), 2016 WL 7093915, at *1 (S.D. Cal. Dec. 6, 2016). The court there found "significant relief" was met because the plaintiff sought "damages from all defendants equally for their alleged wrongful conduct," were the same "whether caused by [the in-state defendant] or another defendant," and even if the in-state defendant's employees "may constitute a smaller percentage of the total class, nothing on the face of the [complaint] suggests [the in-state defendant] is a nominal defendant or that relief from [it] would be insignificant." *Id.* at *6. The court also found "significant basis" where the complaint alleged that the in-state defendant "employed members of the plaintiff class during the relevant period and violated California law in a number of ways previously mentioned with respect to those employees" and "engaged in the exact same wage-and-hour violations as the other defendants." *Id.* at *5.

Finally, in *Sanchez v. Vail Resorts Management Company*, the court split its decision on these two prongs. No. 2:25-CV-01259 WBS SCR, 2025 WL 2835631, at *1 (E.D. Cal. Oct. 7, 2025). As for "significant relief," the court found it sufficient that damages and injunctive relief were alleged against defendants, including the in-state defendant, and that plaintiff's failure to "break down which of [her] damages were attributable to [the in-state defendant] is not fatal to [her] ability to establish this prong of the local controversy exception." *Id.* at *3. However, as for "significant basis," the court found it not met because "plaintiff alleges various California Labor Code violations against all defendants" and only included one allegation specifically mentioning the in-state defendant, "making it difficult for the court to identify [its] basis in the context of the overall claims asserted." *Id.* (citation

and internal quotation marks omitted). Thus, the court concluded that because each "defendant is an employer alleged to have violated California's Labor Code with respect to the class members they employed," the court "cannot determine the extent to which [the in-state defendant's] conduct – as opposed to another defendant-employer's conduct – forms a basis for the claims asserted." *Id.* at *4.

The disparate conclusions in these cases highlight one of the limitations of solely relying on the allegations of the complaint, but the Ninth Circuit is clear that this Court cannot look any farther. Thus, bound to the allegations of the complaint, this Court finds that it should follow the Ninth Circuit's result in *Coleman*. In that case, two defendants were sued—Estes Express was a Virginia corporation and Estes West was a California corporation. 631 F.3d at 1012. The complaint alleged that the two defendants violated several similar wage and hour violations as here. *Id.* It sought wages, penalties, and injunctive relief against the defendants. *Id.* The complaint further alleged a similar relationship between defendants:

> each and all of the acts and omissions alleged herein was [sic] performed by, or is attributable to [Estes Express Lines, Inc. and/or Estes West and Doe Defendants], each acting as the agent for the other, with legal authority to act on the other's behalf . . . At all relevant times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

*Id.* at 1013. "The remainder of the complaint referred to actions taken by 'Defendants,' rather than actions taken separately by Estes Express or Estes West." *Id.*

Given the similarities between the allegations in the Complaint in this case and in the *Coleman* complaint, the Court does not find any meaningful distinction to be made here. These allegations against the collective defendants—including the in-state defendant—were sufficient in *Coleman* to meet both the "significant relief" and "significant basis" requirements and the Court finds that they also are met here.

///

### 3. No Other Class Action

The last section challenged by Defendants is the requirement[3] that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." *Id.* § 1332(d)(4)(A)(ii). Defendants point to the class action currently pending in the Central District of California, *Mendoza v. DNC Travel Hospitality Services, et. al.*, Case No. 24-cv-11233-WLH-E, to defeat this requirement. ECF No. 12 at 21.

Courts have held that the focus of this inquiry is "whether the complaints had the same or similar factual allegations, not whether they had the same or similar causes of action or legal theories." *Giannini v. Nw. Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *5 (N.D. Cal. Apr. 30, 2012); *Evangelista v. Just Energy Mktg. Corp.*, No. SACV1702270CJCSSX, 2018 WL 1026370, at *4 (C.D. Cal. Feb. 21, 2018); *Jadeja v. Redflex Traffic Sys., Inc.*, No. C 10-04287 WHA, 2010 WL 4916413, at *3 (N.D. Cal. Nov. 22, 2010) This is both based on the clear statutory text of the statute itself, as well as guidance from the Senate Judiciary Committee:

> The Committee also wishes to stress that the inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed. The inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of action were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects).

S. Rep. No. 109-14, at 41 (2005). "The Committee also explained that Subsection (d)(4)(A)(ii) functions as 'a test for assessing whether a controversy is localized. [I]f a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that [the local controversy exception to CAFA removal] is intended to address'—i.e., disputes with a 'truly local focus' that state courts have a strong

---

[3] Defendants do not challenge the principal injuries prong of 28 U.S.C. § 1332(d)(4)(A)(i)(II).

interest in adjudicating. When a controversy is widespread rather than localized, federal courts are better suited to providing a fair, efficient resolution." *Jadeja*, 2010 WL 4916413, at *3.

The parties dispute whether the *Mendoza* action has the "same or similar factual allegations," and as part of this inquiry, dispute whether this Court should look beyond the allegations in the Complaint. Unlike the provisions above regarding "significant relief" and "significant basis," it does not appear the Ninth Circuit has definitively ruled on whether courts can look beyond the complaint for this requirement. However, the Court finds that the reasoning articulated by the Ninth Circuit in *Coleman* equally applies here. When looking to the statutory text of the "significant relief" provision, the court emphasized that the statute used the word "sought," which refers to what damages are sought in the complaint. 631 F.3d at 1015. Similarly, for "significant basis," the court focused on the statute looking for "alleged" conduct, which again focuses on the complaint. *Id.* The statutory language for the other class action section looks for another class action that "asserting the same or similar factual allegations." The term "allegation" used here also suggests that courts should look to the complaint, as well as the use of the term "asserting."

On the face of the *Mendoza* complaint, it is a wage and hour class action brought against DNC Travel Hospitality Services, Delaware North, Delaware North Companies Travel Hospitality Services, Inc., and Delaware North Companies, Inc. *Mendoza*, Case No. 24-cv-11233-WLH-E (C.D. Cal.), ECF No. 4, Ex. 1 ("*Mendoza* Complaint"). The last defendant, Delaware North Companies, Inc., is a common shared defendant between this action and *Mendoza*. The complaint is brought by current and former employees of Defendants who are non-exempt, hourly workers. *Id.* ¶ 1. The complaint similarly treats all defendants collectively, alleging that they all employed the class members, either directly, as agents, or in some other manner. *Id.* ¶ 10. All violations are alleged equally against the defendants, including violations for failing to pay for all hours works (minimum, regular or overtime rates), failing to provide meal and rest breaks, and failing to furnish accurate wage statements. *Id.* ¶ 12. Comparing these allegations to the ones asserted by Plaintiffs in

this lawsuit, it appears that they contain similar factual allegations as contemplated under this rule.

Most of Plaintiffs' counterarguments as to why there is not sufficient overlap between this action and the *Mendoza* action points to the lack of practical overlap. For example, Plaintiffs argue that the classes do not overlap, the witnesses will not overlap, the true employers of the classes do not have the same policies, and the results from one lawsuit will not bind the other. ECF No. 22 at 9-10. Plaintiffs appear to rely on the Ninth Circuit case *Bridewell-Sledge v. Blue Cross of California*, where the court recited to purpose of this prong to "to ensure that overlapping or competing class actions or class actions making similar factual allegations against the same defendant that would benefit from coordination are not excluded from federal court by the Local Controversy Exception and thus placed beyond the coordinating authority of the Judicial Panel on Multidistrict Litigation." 798 F.3d 923, 932 (9th Cir. 2015). While this is one concern stated in the Senate Report, the same report also stated this prong is a "a test for assessing whether a controversy is localized" and that "if a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that this exception is intended to address." S. Rep. No. 109-14, at 39 (2005). Thus, the Court does not believe the purpose should be read as narrowly as focusing on whether the two class actions fit the criteria for being consolidated into a multidistrict litigation. Indeed, the Senate Report itself states that it does not matter if the same causes of action are asserted or if the plaintiff classes were the same or even overlapped. *Id.* at 41. Finally, even taking the purpose of this provision into account, "the Ninth Circuit's recital of the statutory purpose of the fourth prong did not authorize district courts to examine whether that purpose would be well served in a given case, as a substitute for applying the plain language of the statute." *Carroll*, 2025 WL 2621704, at *7.

Thus, the Court finds that the *Mendoza* class action is a class action that qualifies as another class action under this prong of the local controversy inquiry, and prevents the application of the exception to the case. Accordingly, the Court finds that the local

controversy exception does not require this case to be remanded back to state court, and **DENIES** the motion to remand.

## IV.    CONCLUSION

After due consideration and for the reasons discussed above, the Court **DENIES** Plaintiffs' Motion to Remand.

**IT IS SO ORDERED.**

Dated: October 29, 2025

Honorable James E. Simmons Jr.
United States District Judge